IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-01843-PAB-KMT

KLEIN FRANK, P.C.,

    Plaintiff,

v.

JAMES E. GIRARDS and
JAMES E. GIRARDS, P.C., d/b/a The Girards Law Firm,

    Defendants.

---

**ORDER**

---

This matter is before the Court on the Motion to Dismiss [Docket No. 11] filed by defendants James E. Girards and James E. Girards, P.C. Defendants move to dismiss the complaint [Docket No. 17] filed by plaintiff Klein Frank, P.C. ("Klein Frank") on the grounds that the Court lacks personal jurisdiction over them.

**I. BACKGROUND**[1]

This case arises out of a state personal injury lawsuit filed by David Dawson in the District Court for the County of Dallas, Texas. *See Dawson v. Fluor Intercontinental, Inc.*, Case No. 09-cv-15340 ("*Fluor*"). In *Fluor*, defendants James E. Girards and James E. Girards, P.C. were local counsel for Mr. Dawson. Klein Frank also represented Mr. Dawson in that case. Mr. Dawson terminated defendants' representation of him in the *Fluor* case in September 2011. On December 7, 2011,

---

[1]The following facts are taken as true as alleged in Klein Frank's complaint.

Klein Frank filed this action in the District Court for the County of Boulder, Colorado seeking a declaratory judgment that defendants are not entitled to attorneys' fees for work performed in *Fluor* because defendants were terminated for cause. Docket No. 17 at 6, ¶¶ 12-13. While this case was pending in Boulder County, Colorado the *Fluor* case went to trial in Dallas and, on June 15, 2012, the jury awarded Mr. Dawson approximately $18.78 million in damages. *See* Docket No. 24-1.[2] On June 15, 2012, Klein Frank served defendants with the complaint in this case, Docket No. 1 at 1, ¶ 3, and on July 13, 2012, pursuant to 28 U.S.C. § 1332, defendants removed the case to this court. *Id*. at 2, ¶ 4. On July 23, 2012, defendants filed the present motion to dismiss [Docket No. 11] pursuant to Fed. R. Civ. P. 12(b)(2).

## II.   STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(2) is to determine whether the Court has personal jurisdiction. The plaintiff bears the burden of establishing personal jurisdiction over defendants. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). The plaintiff can satisfy its burden by making a prima facie showing of personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The Court will accept the well-pleaded allegations of the complaint as true to determine whether plaintiff has made a prima facie showing that personal jurisdiction exists. *AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further. *Id*. The

---

[2]On August 20, 2012, the *Fluor* court entered final judgment in favor of Mr. Dawson in the amount of $18.78 million. Docket No. 32-4 at 62.

plaintiff, however, may also make this prima facie showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant. *Dudnikov*, 514 F.3d at 1070. "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiffs' favor." *Id*.

### III. ANALYSIS

#### A. Forum Selection Clause

Klein Frank argues that defendants consented to personal jurisdiction in Colorado because Mr. Dawson's representation agreement contains a forum selection clause requiring that any disputes regarding the contract be heard in Denver County, Colorado. *See* Docket No. 13-1 at 4. Generally, forum selection clauses are *"prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992) (emphasis in original). However, Klein Frank is not entitled to enforce this forum selection clause against defendants because the contract at issue is a contract between Klein Frank and Mr. Dawson. Docket No. 13-1 at 4 ("[i]n the event that a dispute arises between you [Dawson] and the firm . . . concerning costs, attorney fees. . . [t]his arbitration agreement is intended to be inclusive as to all possible claims and is binding upon the parties"). Although defendants are signatories to the contract, the language of the arbitration and forum selection clauses makes it clear that these clauses were intended to resolve disputes between Mr. Dawson and the law firms.[3] Because Mr. Dawson is not involved in this fee dispute, defendants are not

---

[3]Neither party has argued or suggested whether federal common law or state substantive law applies to the construction of the contract. *See K & V Scientific Co.,*

3

bound by the forum selection clause. Moreover, to the extent that the forum selection clause is ambiguous, the Court will "construe it against the drafter," in this case Klein Frank. *Milk 'N' More*, 963 F.2d at 1346; *accord K & V Scientific*, 314 F.3d at 500. Accordingly, since the forum selection clause does not reflect defendants' consent to personal jurisdiction in Colorado, the Court finds that the forum selection clause does not form a basis for personal jurisdiction over defendants. *See Ruggieri v. General Well Service, Inc.*, 535 F. Supp. 525 (D. Colo. 1982) (noting that a court may exercise personal jurisdiction based upon the defendant's consent, presence in the state, or sufficient minimum contacts with the state).

### B.   Personal Jurisdiction

In a diversity action, a federal court has personal jurisdiction over a defendant if jurisdiction is consistent with the state's long arm statute and if jurisdiction does not violate the due process clause of the Fourteenth Amendment. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074-75 (10th Cir. 2004). The Colorado long arm statute, Colo. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent of the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process. *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270,

---

*Inc. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 497 n.4 (10th Cir. 2002) (accepting a district court's decision to use federal common law because parties did not object). Because the outcome of this case will be the same under either analysis, the Court will rely on federal common law. *See TH Agric. & Nutrition, LLC v. Ace European Group Ltd.*, 416 F. Supp. 2d 1054, 1075 (D. Kan. 2006) (finding it unnecessary to decide between state and federal law when no material discrepancies existed between them).

1276 (10th Cir. 2005); *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo. 1992); *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005).

Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction. Where general jurisdiction is asserted over a non-resident defendant who has not consented to suit in the forum, minimum contacts exist if the plaintiff demonstrates that the defendant maintains "continuous and systematic general business contacts" in the state. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Specific jurisdiction is present where the defendant has purposefully directed his activities at the residents of the forum and the litigation results from injuries that arise out of or relate to those activities. *Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1298 (10th Cir. 1999).

### 1. General Jurisdiction

General jurisdiction requires that a defendant have contacts with the forum "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, --- U.S. ----, 131 S.Ct. 2846, 2851, (2011); *see also Trujillo v. Williams*, 465 F.3d 1210, 1218 n. 7 (10th Cir. 2006). "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate

the defendant's continuous and systematic general business contacts." *Benton*, 375 F.3d at 1080. To establish general jurisdiction, courts consider the frequency of a defendant's travel to the forum state, amount of work a defendant performs in the forum state, and whether a defendant owns property in the forum state. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1544 (10th Cir. 1996); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

Klein Frank's evidence of defendants' contacts with Colorado consists of defendant Girards' *pro hac vice* appearance in *Garrigan v. Bowen*, Case No. 06-cv-399 (2008), a civil case in the District Court for Mesa County, Colorado, a few business trips defendant Girards took to Colorado, phone conferences between defendants and attorneys located in Colorado, emails defendants sent to Klein Frank in Colorado, and defendants' agreement to deposit the disputed attorneys' fees in this case in Klein Frank's COLTAF Trust Account ("Trust Account"), which is located in Boulder, Colorado. *See* Docket No. 13. However, because defendants do not reside in Colorado, do not own property in Colorado, and have performed only minimal and sporadic work in Colorado, the Court finds that defendants' occasional contacts with Colorado are too random and attenuated to rise to the level of continuous and systematic business contacts necessary to confer general jurisdiction. *Benton*, 375 F.3d at 1080; *Trierweiler*, 90 F.3d at 1532. Accordingly, Klein Frank has not alleged sufficient facts to establish that the Court's exercise of general jurisdiction over defendants is appropriate.

### 2. Specific Jurisdiction

The specific jurisdiction analysis is two-fold. First, the Court must determine whether defendants have such minimum contacts with Colorado that defendants "should reasonably anticipate being haled into court" here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Within this inquiry, the Court must determine whether defendants purposefully directed their activities at residents of the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), and whether Klein Frank's claim arises out of or results from "actions by . . . defendant[s] . . . that create a substantial connection with the forum State." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987) (internal quotations omitted). Second, if defendants' actions create sufficient minimum contacts, the Court must consider whether the exercise of personal jurisdiction over defendants offends "traditional notions of fair play and substantial justice." *Id*. at 113. This latter inquiry requires a determination of whether the Court's exercise of personal jurisdiction over defendants is "reasonable" in light of the circumstances of the case. *Id*.

Klein Frank argues that the Court can exercise specific jurisdiction because defendants purposefully availed themselves of the benefits and protections of the State of Colorado when they: (1) applied for and made *pro hac vice* appearances in *Garrigan*; (2) entered into a contract with Klein Frank to provide representation in *Fluor*; (3) sent over sixty emails to Klein Frank in Colorado; and (4) demanded that the disputed attorneys' fees at issue in this case be deposited in a Trust Account located in Boulder, Colorado. Docket No. 13 at 4-8. In addition, Klein Frank claims that exercising

personal jurisdiction over defendants would not offend traditional notions of "fair play and substantial justice." *Id*. at 8. The Court addresses these arguments in turn.

### a. Garrigan v. Bowen

Klein Frank argues that defendants' participation in *Garrigan* is prima facie evidence of purposeful availment because (1) there is a logical nexus between *Garrigan* and *Fluor*; and (2) defendants' involvement in *Garrigan* is proof of an intended continuous and ongoing business relationship between Klein Frank and defendants.

To determine whether there is a nexus between defendants' *pro hac vice* appearances in *Garrigan* and the current action for a declaratory judgment, the Court will apply the "proximate cause" test. *See Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1161 n.7 (10th Cir. 2010) (noting that, "[i]n contract actions, [the Tenth Circuit] consistently applie[s] the more-restrictive proximate-cause approach"). Under a proximate cause analysis the court asks "whether any of the [defendants'] contacts with the forum [state] are relevant to the merits of the plaintiff's claim." *Id.* (citing *Dudnikov*, 514 F.3d at 1078). Applying this test, Klein Frank's argument for specific personal jurisdiction fails. In this case, Klein Frank seeks a declaration that defendants did not perform their duties according to the terms of the representation agreement. In this regard, what actions defendants did or did not take in connection with *Garrigan* are wholly irrelevant to the resolution of this case. Although Klein Frank asserts that one of the reasons defendants "claimed they could not meet their obligations as co-counsel in" *Fluor* was their participation in *Garrigan*, Docket No. 13-4 at 2, ¶ 6, this allegation is insufficient to establish a logical nexus between the two cases. Thus, because the

events leading to the cause of action in this case were defendants' alleged failure to perform in Texas, and not defendants' involvement in *Garrigan*, the Court finds that Klein Frank has failed to establish a logical nexus between *Garrigan* and the present case.

Next, Klein Frank argues that defendants' participation in *Garrigan* is evidence of a continuing or ongoing business relationship. Docket No. 13 at 5-6. Generally, an individual's contract with an out-of-state party cannot, standing alone, establish sufficient minimum contacts with the forum state. *Burger King*, 471 U.S. at 478. But "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." *Id*. at 473. To determine whether a non-resident defendant has purposefully established minimum contacts with the forum state by contracting with another party, courts examine "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id*. at 479.

Klein Frank does not allege that it engaged in negotiations with defendants before the events leading to *Fluor* and *Garrigan*, and there is no evidence that the parties considered a continuing business relationship after the conclusion of these cases. Plaintiff attaches the affidavit of J. Keith Killian, who was co-counsel with Mr. Girards on the *Garrigan* case. *See* Docket No. 27-2. Mr. Killian approached defendants to work on the *Garrigan* case because of defendants' expertise with medical experts and the plaintiff's medical issues, *id*. at 1, ¶ 4; Mr. Killian arranged the phone

conferences in which defendants participated during *Garrigan*, *id*. at 1-2, ¶¶ 4, 8; defendants participated on the conference calls from Texas; and all the expert depositions performed by defendants occurred outside of Colorado. *Id*. at 2, ¶ 6.[4]

Based on the foregoing, the Court finds that Klein Frank's allegations do not demonstrate that defendants purposefully availed themselves of the privileges of the State of Colorado based on their involvement in *Garrigan*. Defendants did not pursue a business relationship with Colorado residents, but rather were solicited by Mr. Killian. *See OMI Holdings, Inc.*, 149 F.3d at 1092 ("courts have been unwilling to allow states to assert personal jurisdiction over foreign defendants where the defendant's presence in the forum arose from the unilateral acts of someone other than the defendant"); *Burger King*, 471 U.S. at 474 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state"). Additionally, Klein Frank has not established that defendants' participation in *Garrigan* is evidence of the sort of continuing and ongoing business relationship necessary to establish personal jurisdiction. *See Benton*, 375 F.3d at 1078 (finding defendant voluntarily conducted business with plaintiff, a Colorado resident, for at least eight years prior to negotiating the contract at issue); *AST Sports Science, Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1059 (10th Cir. 2008) (finding "a business relationship, lasting over a period of seven years" established minimum contacts). Accordingly,

---

[4]Mr. Killian also states in his affidavit that he asked Mr. Girards to be co-counsel in a federal case in the Western District of Texas where they represented a Colorado plaintiff. Docket No. 27-2 at 1-2. On one occasion, Mr. Girards met with the plaintiff in Colorado. *Id*. at 2.

defendants' involvement in *Garrigan* is insufficient to support the Court's exercise of personal jurisdiction over defendants.[5] *Burger King*, 471 U.S. at 475.

### b. Law Firm Contractual Relationship

Next, Klein Frank claims that the representation agreement between itself and defendants is sufficient to show purposeful availment. In support of these arguments, Klein Frank cites to *Waterval v. Dist. Court in & for El Paso Cnty.*, 620 P.2d 5 (Colo. 1980), and *Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267 (Colo. 2002). In *Waterval*, the Colorado Supreme Court found that it could exercise personal jurisdiction over a Virginia attorney based on his representation of a client located in Colorado. 620 P.2d at 7. In that case, the plaintiff began her attorney-client relationship with the defendant Virginia attorney while she was a resident of Virginia. *Id*. at 7. The plaintiff continued her relationship with the defendant attorney after she moved to Colorado for the span of two years. *Id*. While the plaintiff resided in Colorado, the defendant attorney oversaw the sale of her Virginia home and then oversaw the plaintiff's discretionary investment account. *Id*. After the plaintiff's investment account suffered losses because of the defendant attorney's actions, the plaintiff sued the defendant attorney in Colorado asserting claims for negligence and breach of fiduciary duty. *Id*. In *Keefe*, the Colorado Supreme Court found personal jurisdiction over a New York law firm representing a Colorado resident in a New York

---

[5]To the extent Klein Frank claims that defendants approved the fee agreement for their consulting role in the *Garrigan* case, the Court finds this fact is also insufficient to establish that the parties contemplated an ongoing business relationship. *Burger King*, 471 U.S. at 475. Defendants' involvement in *Garrigan* came about due to defendants' expertise in medical issues, not due to an intention to pursue business in Colorado.

matter was proper in Colorado. 40 P.3d at 1269-71. The Colorado Supreme Court held that the New York law firm had "purposefully directed" its activities at a resident of Colorado; pursued litigation for over eleven years on her behalf; initiated negotiations over the terms of representation; and made countless communications with the Colorado resident establishing "continuing obligations" between the parties. *Id*. at 1272.

*Waterval* and *Keefe* are distinguishable from this case. There, the courts found jurisdiction over out-of-state attorneys sued by their Colorado clients when the cause of action resulted from the defendant attorneys' representation. *See Keefe*, 40 P.3d at 1272-73; *Waterval*, 620 P.2d at 7. Here, the client is not a party to this litigation. Also, in *Waterval* and *Keefe,* the defendant attorneys had more extensive contacts with Colorado. In *Waterval*, while the defendant attorney's representation of a Colorado client was "less than continuous," it had continued for two years and included continuous contact with regard to investments and the sale of the Virginia home. 620 P.2d at 9. Similarly, in *Keefe*, the defendant attorney had represented his client for over eleven years. 40 P.3d at 1270-73. Defendants here did not contact Mr. Dawson in Colorado, Docket No. 11-1 at 5, ¶ 11, appear in Colorado court in connection with *Fluor*, *id*. at 3, ¶ 10, and performed all of their duties pursuant to the contract in the State of Texas. *Id*. at ¶ 9. Moreover, although not clearly established by either party, it appears that Klein Frank initiated its business relationship with defendants for the purpose of resolving legal matters in Texas. *See* Docket No. 13-2 at 5. Thus, unlike the defendant attorneys in *Keefe* and *Waterval*, who purposefully availed themselves of the privileges of the State of Colorado by representing Colorado clients, defendants'

involvement in the *Fluor* case does not establish purposeful availment vis-a-vis Klein Frank. *See String Cheese Incident Ticketing, LLC v. Stylus Shows, Inc.*, No. 05-cv-01934-LTB-PAC, 2006 WL 994239, at *3 (D. Colo. April 14, 2009) (finding that out-of-state attorney did not purposefully avail himself of the benefits of Colorado based on emails and phone calls to Colorado incident to his representation of a Florida client).

Additionally, neither defendants' routine communications with Klein Frank nor defendants' activities on behalf of Mr. Dawson in Texas can, by themselves, establish personal jurisdiction. *See Sher v. Johnson*, 911 F.2d 1357, 1363 (9th Cir. 1990) (noting that, under California long-arm statute that extends to due process, "[o]ut-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where the law firm is solicited in its home state and takes no affirmative action to promote business within the forum state"); *see also Katims v. Millen, White, Zelano & Branigan, P.C.*, 706 F. Supp. 2d 645, 649 (D. Md. 2010) ("case law overflows on the point that providing out-of-state legal representation is not enough to subject an out-of-state . . . law firm to the personal jurisdiction of the state in which a client resides.") (citation omitted); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("[W]hen a lawyer chooses to represent a client in another forum, that in itself does not confer personal jurisdiction if the claim does not arise from the lawyer's contacts with the forum."). Accordingly, the Court finds that the representation agreement between Klein Frank and defendants is not prima facie evidence of purposeful availment.

### c. Direct Communications

Klein Frank argues that, because defendants sent over sixty emails between October 2010 and July 16, 2012 and repeatedly called Klein Frank's offices in Colorado, they purposefully availed themselves of the benefits of doing business in Colorado. Docket No. 13-2 at 2, ¶¶ 2-3. However, it is well-established that "phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." *Far W. Capital Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995). As the Court in *Far West* noted, the mere quantum of contacts between the forum and defendant is not determinative. Instead, the analysis should focus on the quality of the contacts, their significance to the venture, and the overall purpose of the parties' efforts. *Id*. Because Klein Frank solicited defendants to represent a client in Texas, defendants' communications with Klein Frank create only an "attenuated" affiliation with Colorado. *Int'l Shoe*, 326 U.S. at 318. The "nature and quality" of defendants' communications with Klein Frank do not establish defendants' intent to solicit a business venture in Colorado, but merely reflect "occasional acts" necessary to effectuate the parties' contract. Defendants' emails in this regard are not the type of contacts that create a "continuing obligation" showing that defendants have manifestly availed themselves of the privileges of conducting business in Colorado. *Burger King*, 471 U.S. at 475-76.

Klein Frank's reliance on *AST Sports Science, Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054 (10th Cir. 2008), is misplaced. The evidence of communications between the parties in *AST* was used to establish that the plaintiff and the defendant had

contemplated a continuing and ongoing business relationship. *Id*. at 1059. *AST's* discussion of the communications between the parties was only relevant insofar as it showed that the plaintiff and the defendant had been in business for a period of over seven years. *Id*. at 1059-60. By contrast, the communications between Klein Frank and defendants are alleged to have only occurred sporadically over the span of twenty months. *See* Docket No. 13-2 at 2, ¶ 2. Given these facts, the Court finds that Klein Frank has failed to allege a prima facie case of purposeful availment based on defendants' emails and telephone calls. *See Far W.*, 46 F.3d at 1077.

### d.   Situs of the Injury

Klein Frank argues that defendants' failure to perform according to the terms of the contract caused injury in Colorado. Docket No. 13 at 6. Specifically, Klein Frank claims that it had to do its own legal research and had to pay other attorneys to cover defendants' duties, which led to an increase in the amount of money Klein Frank had to pay to provide legal services in *Fluor*. Docket No. 13-2 at 3, ¶ 7. It is well established that a defendant "does not subject himself to jurisdiction in the forum state merely by entering into an agreement with a resident of the forum state." *Gognat v. Ellsworth*, 224 P.3d 1039, 1052 (Colo. App. 2009) (citing cases). Rather, jurisdiction may be found only if there is some other activity by the defendant in the forum state, such as negotiation in the state pursuant to substantial and significant contacts, execution of the contract by the defendant in the forum state, or solicitation of the contract by the non-resident defendant. *Id*. Because the representation agreement envisioned that defendants would perform their duties in Texas, the location of the injury in this case is

the State of Texas. The mere fact that Klein Frank had to expend additional costs in Colorado is insufficient to establish that any injury occurred in the State of Colorado. *Cf. Wenz v. Memery Crystal*, 55 F.3d 1503, 1508 (10th Cir. 1995) ("Hence, when both the tortious conduct and the injury occur in another state, the fact that plaintiff resides in Colorado and experiences some economic consequences here is insufficient to confer jurisdiction on a Colorado court."). Accordingly, the Court finds that Klein Frank has failed to show that the additional costs it incurred are sufficient to establish a prima facie case of purposeful availment.

### e.  In Rem Jurisdiction

Klein Frank contends that defendants purposefully availed themselves of the benefits of the State of Colorado when they negotiated an agreement with plaintiff to deposit the jury award from *Flour* in a Trust Account located in Boulder, Colorado. Docket No. 13-2 at 3, ¶ 6. The Court finds that defendants' agreement to deposit the attorneys' fees at issue in a Trust Account is insufficient to show purposeful availment. In *Shaffer v. Heitner*, 433 U.S. 186 (1977), the Supreme Court abandoned the notion that *quasi in rem* jurisdiction could be predicated entirely on the "presence" of intangible property in the forum state. *Id*. at 212. *Shaffer* involved a shareholder's derivative suit in Delaware against Greyhound Corporation and its present and former officers who were not residents of Delaware. *Id*. at 189-90. The Delaware court exercised *quasi in rem* jurisdiction over the non-resident defendants pursuant to a Delaware statute that allowed for the sequestration of shares of stock owned by defendants completely unrelated to the plaintiffs' cause of action. *Id*. at 193-94. The Supreme Court found

that the Delaware statute was not in accordance with the principles of due process and held that an assertion of *quasi in rem* jurisdiction required that there be minimum contacts between the defendants and the forum. *Id*. at 207. Thus, *Shaffer* held that, although the location of the property could be evaluated as a contact the "standard for determining whether an exercise of jurisdiction over the [property] of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in International Shoe." *Id*.

While the presence of the Trust Account in Boulder may establish a contact within the State of Colorado, this contact alone is not dispositive of the jurisdictional issue. *Id*. at 209. Because defendants' request that the jury award from *Fluor* be deposited in Colorado occurred after the alleged breach of contract, it did not give rise to Klein Frank's cause of action. As such, it is insufficient to establish purposeful availment. *See Dudnikov*, 514 F.3d at 1078 ("[h]aving determined that defendants 'purposefully directed' their activities at the forum state, due process requires us next to ask whether plaintiff's injuries 'arise out' of defendants' contacts with the forum jurisdiction"). Moreover, it would be unreasonable to impose jurisdiction over defendants simply because they agreed to deposit a not yet accrued monetary judgment in Colorado. *See Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1528 (10th Cir. 1987). Accordingly, the Court finds that Klein Frank has failed to allege a prima facie case of purposeful availment based on defendants' request to deposit the *Fluor* jury award in Boulder, Colorado.

### f. Website

Klein Frank claims that defendants' websites establish purposeful availment because they represent defendants as a national law firm with a wide range of expertise in state and federal courts. *See* Docket Nos. 13-5, 13-6. To determine whether the operation of a website demonstrates purposeful availment, courts analyze whether the website is merely "passive" in that it posts "information on an Internet Web site which is accessible to users in a different forum" or "interactive," in that it allows customers to conduct business over the internet between different fora. *Soma*, 196 F.3d at 1296-97 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997)). Based on the exhibits provided by Klein Frank, it has failed to make a prima facie showing that defendants' websites are anything more than passive informational sites. *Id*. Accordingly, the Court finds that defendants' websites are insufficient to make a prima facie cause of purposeful availment. *Dudnikov*, 514 F.3d at 1070.

### g. Cumulative analysis

The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. *Burger King Corp.*, 471 U.S. at 475. When considering the various contacts that plaintiff identifies, such as defendants' participation in *Garrigan*, the law firm contract to represent Mr. Dawson in Texas, and defendants' emails to plaintiff, it is apparent that all of these contacts arise as a result of the unilateral solicitation efforts of either plaintiff or Mr. Killian. In addition, defendants' agreement to deposit the jury award from *Fluor* in Colorado is the result of plaintiff initiating this case in Colorado. Thus, even when

considering the evidence cumulatively for purposes of the specific jurisdiction analysis, this evidence does not show that defendants purposefully availed themselves of the privileges of Colorado. *Id*. at 472. Because Klein Frank does not allege sufficient facts to show that defendants purposely availed themselves of the benefits and protections of Colorado, it necessarily fails to state a prima facie case for the Court to exercise specific personal jurisdiction. Therefore, the Court will not address whether the exercise of personal jurisdiction over defendants would offend traditional notions of fair play and substantial justice. *Dagen v. Book*, 249 F.R.D. 362, 367 (D. Colo. 2008). Accordingly, the Court will dismiss the case without prejudice for lack of personal jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Docket No. 11] is **GRANTED**. It is further

**ORDERED** that Defendants' Motion for Leave to Submit Supplemental Authority [Docket No. 63] is **GRANTED**. It is further

**ORDERED** that Klein Frank's Complaint [Docket No. 17] is dismissed without prejudice. It is further

**ORDERED** that this case is closed in its entirety.

DATED March 18, 2013.

                                BY THE COURT:

                                s/Philip A. Brimmer
                                PHILIP A. BRIMMER
                                United States District Judge